THE STATE v. JAMES FLEMING.

*Burglary—Indictment—Statute.*

1. Under chapter 434, Laws 1889, creating two. degrees of burglary, to support a charge of burglary in the first degree it is essential that the indictment should contain an averment, and, upon the trial, the proof should establish the fact that the house was, at the time of the commission of the alleged crime, in the actual occupation of some person.

2. But one charged with burglary in an indictment drawn under the common law may be convicted of burglary in the second degree.

3. And one charged with burglary in the first degree may be convicted of the second degree if the proofs, upon the trial, are sufficient to establish that grade of the crime.

4. One charged with burglary may be convicted of larceny, or of the crime designated in section 996 of *The Code.*

5. Upon the trial of an indictment for burglary, the proof tended to show that the felonious entry was made either through a window, the blinds of which were closed, but not fastened, or through a door which had been bolted, and the Court charged the jury that, "In order to constitute a breaking, * * * it is not not necessary that the inmates of the house should have resorted to locks and bolts. If the blinds and door were held in their position by their own weight, and, in that position, relied upon by the inmates as a security against intrusion. it is sufficient fastening": *Held* to be correct.

This was an Indictment for Burglary, tried before Womack, J., at September Term, 1890, of the Superior Court of Pitt County.

Miss Denby James, a daughter of the prosecutor, was sworn and examined on the part of the State, and was the only witness who testified as to any facts with reference to the closing or fastening or condition of the doors, windows, etc., of the dwelling-house specified in the indictment, on the night of the alleged burglary.

Her evidence on this point was as follows:

"Some one opened the blinds and went in mother's room where the children were, and then came through the partition door to my room. The window was up. It was hot weather. The blinds were fastened with a catch on the inside. I had shut the blinds myself. The person who entered through the window made his escape by passing out of the same window, and as he went out I heard a noise as of some one sliding out of the window upon the ground. Very shortly thereafter I heard a noise that sounded like the click of the door of the kitchen, which was under the same roof as my bed-room and opening outside, and I heard a noise as of some one walking in the kitchen. I had fastened the kitchen door by bolting it. The intruder must have come out of the door by which he entered. * * * On cross-examination, the witness testified that in shutting the blinds that night she did not examine to see whether the blinds were fastened or not, and that she could not say and did not know whether they were fastened or not when she closed them."

There was no other evidence as to whether the blinds in shutting were held by their own weight together or against any object.

The Judge charged the jury as to the breaking, as follows:

"In order to constitute a breaking in this case, either the window blind must have been fastened or else the door to the dining-room and cook-room opening to the outside must have been fastened. To constitute a fastening in either instance it is not necessary that the inmates of the house should have resorted to locks and bolts. If held in their position (having been shut by the witness Denby James), by their own weight and in that position relied on by the inmates as a security against intrusion, it is sufficient. It would not be a sufficient breaking if the blinds or door were ajar however slightly, and the prisoner simply increased the

size of the opening and through it entered.   The jury must be fully satisfied from the evidence in the case that either the window blind or the dining-room door was so shut, fastened and relied upon as a security against intrusion at the time of the entry into the house; for burglary cannot be committed by the entering through an open door or window."

To which charge the prisoner excepted.   The Judge also charged the jury that on the bill of indictment upon which the prisoner was tried he could not be found guilty of burglary in the first degree, but the jury could render either of the three following verdicts, viz.: guilty of burglary in the second degree; guilty of larceny, or not guilty; to which charge the prisoner excepted.   There was a verdict of guilty of burglary in the second degree.   Rule for new trial for misdirection by the Court as set forth above.   Rule discharged.   Motion in arrest of judgment for defect in the bill of indictment, in that it fails to charge the particular fact constituting burglary in either of the two degrees as created and defined by chapter 434 of the Acts of 1889. Motion overruled.   Judgment, and prisoner appealed.

*The Attorney General,* for the State.
*Messrs. Nixon & Galloway* (by brief), for defendant.

CLARK, J.: The charge of the Court as to what would be a sufficient "breaking" is fully sustained by the precedents. If a door or window is firmly closed, it is not necessary that it should be bolted or barred.   *State* v. *Boon,* 13 Ired., 244; Whart Cr. Law, §§ 759 and 767, and cases cited.   Take the case of raising a window not fastened, although there was a hasp which could have been fastened (*Reg* v. *Hyams,* 7 Car. & P., 441, and *State* v. *Carpenter,* 1 Houston (C. C.), 367); or where the prisoner, by raising or pulling down the sash, kept in its place merely by pulley-weight (*Rex* v. *Haines,* Russ & Ryan, 451); or by pushing open a closed door, not

latched (*State* v. *Reid*, 20 Iowa, 413); or closed but not locked (*Hild* v. *The State*, 67 Ala., 39); or firmly closed, though there was no fastening of any kind on the door (*Finch* v. *Commonwealth*, 14 Grat., 643); or *Ryan* v. *Bird*, 9 Car & P., where the glass of a window had been cut, but every portion of the glass remained in its place until the prisoner pushed it in and so entered; or where a window was on hinges, with nails behind it as wedges, but which, nevertheless, would open by pushing, and was so opened by the prisoner; in all of which cases the "breaking" was held to be sufficient. If the entrance was either by pulling open the blinds which had been firmly closed, whether fastened by the catch or not, or through the door which had been bolted, the above decisions apply.

The indictment charged the offence as in the old form, without alleging that the dwelling-house was in the actual occupation of anyone at the time of the commission of the crime. This was not required at common law, nor under *The Code*, § 995, but now, under the provisions of chapter 434, Acts of 1889, the omission of that averment makes the indictment good only as an indictment for burglary in the second degree, and for that offence the defendant was convicted. To constitute a sufficient indictment for burglary in the second degree it is not required to use the negative averment that the dwelling-house was not actually occupied at the time of the commission of the crime. Burglary being sufficiently charged, as at common law, the omission of the additional averment of actual occupation required by the act of 1889 to constitute the capital felony of burglary in the first degree leaves simply the indictment good for the other degree of burglary, in which that averment is not essential. It is not necessary in an indictment for manslaughter to negative the allegation of malice aforethought, though its absence is part of the settled definition of the offence.

We do not understand the provision of the statute that, on an indictment for burglary in the first degree, the jury can return a verdict of burglary in the second degree, "if they deem it proper so to do," to make such verdict independent of all evidence. The jury are sworn to find the truth of the charge, and the statute does not give them a discretion against the obligation of their oaths. The meaning of this provision evidently is to empower the jury to return a verdict of guilty of burglary in the second degree upon a trial for burglary in the first degree, if they deem it proper so to do from the evidence, and to be the truth of the matter. This is in analogy to a verdict of manslaughter which may be rendered on an indictment for murder.

If the Court had erred in charging that the defendant could not be convicted of burglary in the first degree, we do not see how the defendant could except thereto. The charge that the jury, if satisfied of the larceny but not of the burglary, could convict of the larceny, was correct. *State* v. *Grisham*, 1 Hay., 13. As, however, the conviction was not of larceny, but of the greater offence, the defendant, in no view of the case, was prejudiced. Indeed, the Court might have told them further that they might, if the evidence justified it, find the defendant guilty of breaking into a dwelling-house not burglariously, under *The Code*, § 996 (an offence which is punishable to the same extent and in the same measure as larceny), but there was no request so to charge, and the omission to charge it is not error. *State* v. *Bailey*, 100 N. C., 528; *McKinnon* v. *Morrison*, 104 N C., 354; *Taylor* v. *Plummer*, 105 N. C., 56.

The objection taken in this Court that the judgment should be arrested because it is not charged in the indictment that the offence was committed since the act of 1889, is disposed of by the opinion in *State* v. *Halford*, 104 N. C., 874, in which a similar point was raised, and in which MERRIMON, C. J., points out the inapplicability of the case of

*State* v. *Wise*, 66 N. C., 120, which is again relied on in the argument in this case.   Since here the charge and proof are both of an offence committed subsequent to the act changing the punishment, *State* v. *Wise* cannot apply.   Were this not true, whenever the punishment of any offence is changed by statute it would be necessary that all indictments therefor for all time (until the punishment is again changed) should contain an averment negativing the commission of the offence prior to the passage of the act.   Such cannot be required.   Should the proof in any case show that, in fact, the crime charged as committed subsequent, was, in fact, committed prior, to the amendatory act, in the absence of any saving clause therein, the principle laid down in *State* v. *Wise* would apply.

Affirmed.